(Lorain County Court of Common Pleas.)

THE VILLAGE OF LORAIN *v.* THE LORAIN SAVINGS & BANKING CO.

---

*Attachment—Garnishment of maker of promissory note.*—Under the provisions of our attachment law (sec. 5530 Rev. Stat.) the process of garnishment can only operate on what the garnishee might be owing to the defendant in attachment at the time of the service of notice. If the debt is represented by a promissory note, which, prior to the service of notice, had passed by endorsement from the defendant in attachment to a third party, there would be nothing owing by the garnishee to the defendant, so far as the note is concerned, and if the garnishee inadvisedly answers that he is still indebted to the defendant in the attachment, the actual holder of the note, not being a party to the proceeding, would not thereby be prejudiced. This applies as well to notes endorsed before as those endorsed after maturity, and whether the garnishee had notice of the transfer of the note or not.

*Same—Application of rule.*—An Ohio company was indebted to a Michigan company on an account for part of which is executed its notes to said Michigan company, and the latter then mortgaged said account and notes with other assets to a third party by chattel mortgage executed in Michigan, and filed there, but not filed in Ohio, and the mortgagee foreclosed said chattel mortgage and bought in said ac-

count and notes of the Ohio company with the other assets at such foreclosure sale, and thereupon transferred all of such assets to a fourth party, all of such proceeding taking place in Michigan. Such fourth party is the owner of all such assets including the account and notes of the Ohio company, and will be entitled to the payment of the same, as against the Michigan company to whom the account and notes were orignially payable, in a garnishee proceeding instituted in Ohio by the Michigan company against the Ohio company to obtain the payment of such account and notes for itself; and the case does not depend on the comity between states, as to the rights of a mortgagee in one state against an attaching creditor in another.

(Decided August 1, 1895.)

NYE, J.

The case of The Village of Lorain against The Lorain Savings & Banking Company and others, is an action brought in this court by the plaintiff to reach certain money in the hands of the defendant, The Lorain Savings & Banking Company, and for other equitable relief.

The principal issues in the case have been arranged and adjusted among the parties to the action. There is, however, one question left to be submitted to the court, and that is the issue between the defendant, The Fisher Electrical Manufacturing Company, and the defendant, The Buckeye Electric Company.

In this case E. C. Manter was appointed receiver to take charge of the property in controversy, which included the assets of The National Vapor Stove & Manufacturing Company and certain funds in the defendant bank which were in controversy in this case.

There is a small portion of the funds that was in controversy in the hands of the receiver, which by an agreement of parties has been paid into court, and it is agreed among all the parties to this suit, that said portion of funds either belongs to The Fisher Electrical Manufacturing Company, or to The Buckeye Electric Company.

The parties to the issue that is now submitted to the court for determination have agreed upon the following statement of facts:

First—The Fisher Electric Company is a corporation duly organized under the laws of the state of Michigan, and has been such since January 1, 1890. On and before July 21, 1893, The National Vapor Stove & Manufacturing Company, defendant herein, was indebted to said Fisher Electric Company upon an account for goods manufactured at its manufactory at Detroit, Michigan, and sold and delivered to said The National Vapor Stove & Manufacturing Company, which was a corporation doing business at Lorain county, Ohio, in the sum of $950.00; that to evidence a portion of said indebtedness the said The National Vapor Stove & Manufacturing Company executed and delivered to the said The Fisher Electric Company its promissory notes, as follows:

One note dated June 16, 1893, for $450.00, due in ninety days from date, and one note for $450.00 dated July 1, 1893, and due in thirty days from date.

Second—That on the 25th day of September, 1893, the said The Fisher Electric Company, for the consideration of $24,829.50, duly made, executed and delivered to one Christian H. Meday a chattel mortgage upon said indebtedness, notes and account and other property, and upon the 8th day of January, 1894, by proceedings duly had, said chattel mortgage was foreclosed and said indebtedness, account and notes were under said proceeding duly sold, and delivered to said Christian H. Meday; that all of the proceedings had under said mortgage were had in the state of Michigan; that such mortgage was never filed in Ohio, nor any proceedings taken under it in said state of Ohio.

Third—That on the 8th day of January, 1894, said Christian H. Meday, for a good and valuable consideration, duly sold and transferred said indebtedness and the account and notes evidencing the same, to The Fisher Electrical Manufacturing Company, which was also a corporation duly incorported under the laws of the state of Michigan.

Fourth—That the Buckeye Electric Company is a corporation duly incorporated under the laws of the state of Ohio, and that it recovered a judgment against The Fisher Electric Company on the 21st day of May, 1894, in the Circuit Court of Wayne County, Michigan, for the sum of $1313.27, and that the same is still in force, unreversed, unappealed and unpaid; that on the 30th day of January, 1895, a writ of garnishment was duly served upon E. C. Manter, receiver, heretofore appointed in this case by said Buckeye Electric Company, as set up in its answer and cross-petition, the facts in which are true.

Fifth—That the sum of $——by agreement of the parties hereto has been accepted in full of the amount due from The National Vapor Stove & Manufacturing Company, and by said receiver paid into court to abide its order in the premises.

Sixth—The case to be submitted to Judge Nye without the intervention of a jury."

The question has been submitted by attorneys for the respective parties upon this agreed state of facts and written briefs.

It will be observed that the fund to be disposed of by this decision is the amount due upon the notes and account set forth in the agreed state ment of facts.

The Fisher Electrical Manufacturing Company claims the fund, because it says it was the owner of the notes and account in controversy. The Buckeye Electric Company claims the fund by virtue of an attachment and garnishee procured in an action brought upon the judgment against The Fisher Electric Company.

Quite a number of authorities have been cited by attorneys upon each side of the issue in controversy, all of which I have carefully examined. And after a careful examination of all the authorities cited, and a due consideration of the case, I am of the opinion that the decision in this matter must turn upon the question as to who was in fact the owner of the notes and account, and entitled to the proceeds thereof at the time of the serving of the writ of garnishment upon the receiver, E. C. Manter, on the 30th day of January, 1895.

The judgment of The Buckeye Electric Company was against The Fisher Electric Company. The receiver, E. C. Manter, was garnisheed; because, it is claimed, he had funds in his hands owing to or belonging to The Fisher Electric Company.

By the second clause of the agreed statement of facts, it is said that the "account and notes were under said proceedings duly sold and delivered to said Christian H. Meday."

In the third clause of the agreed statement of facts it is said "that on the 8th day of January, 1894, said Christian H. Meday for a good and valuable consideration duly sold and transferred said indebtedness and the account and notes evidencing the same to The Fisher Electrical Manufacturing Company. I am, therefore, of the opinion that the title to said notes and account through the intervention of the proceedings for the foreclosure of said mortgage and the assignment by said Meday to The Fisher Electrical Manufacturing Company passed to said Fisher Electrical Manufacturing Company on said 8th day of January, 1894, and that from that time forward The National Vapor Stove & Manufacturing Company and E. C. Manter, its receiver, owed whatever it or he owed to The Fisher Electrical

Manufacturing Company, and owed nothing to the Fisher Electric Company.

I am therefore of the opinion that from the 8th day of January, 1894, the mortgage theretofore given upon said notes and account ceased to have any validity whatever, and that the determination of this case does not depend upon the comity between states as to the rights of a mortgagee in one state against an attaching creditor in another.

After said proceedings of January 8, 1894, if said National Vapor Stove & Manufacturing Company or E. C. Manter had been called upon in a court to answer to said garnishee process, neither said company nor said receiver could have truthfully said that it or he was indebted to The Fisher Electric Company.

The title to the notes and accounts having passed by proceedings in court and assignment from The Fisher Electric Company to Christian H. Meday, and from Meday to The Fisher Electrical Manufacturing Company, the debt was due and owing to The Fisher Electrical Manufacturing Company.

In the case of Knisely v. Evans, 34 Ohio St. 158, our Supreme Court holds that "Where a negotiable promissory note is transferred by indorsement, after maturity, the legal title is thereby vested in the indorsee; and, after such indorsement, the amount due on the note can not be garnisheed in the hands of the maker, whether he has notice of the transfer or not, as a debt due to the original holder."

In this case just cited Elias Knisely on the 17th day of June, 1872, made and delivered his negotiable promissory note to one Harrison P. Arnold. On the 20th day of June, 1872, Arnold sold and transferred said note to one Evans. On the same day, but after Arnold had sold and transferred said note to Evans, Hummell & Brother brought an action against Arnold and garnisheed Knisely. Knisely appeared in court in response to the notice of garnishee, and answered that he was indebted to Arnold upon said promissory note, and the court ordered him to pay into court the sum of $218.75, which he did. Afterward Evans brought suit against Knisely, the maker of the note, for the full amount of said note. Knisely defended on the ground that he had paid a portion of said note into court upon said writ of garnishee.

The Supreme Court in deciding this case say, on page 162 of the opinion, that "From these provisions it is apparent that the process of garnishment could only operate on what Knisely, the garnishee, might be owing Arnold, the defendant in attachment, at the time of the service of notice. Prior to this service of notice, the note in question had passed, by indorsement, to Evans. There was, therefore, at the time of service, nothing owing by Knisely to Arnold, as respects the note to be garnisheed.

"The fact that Knisely, in answering as garnishee, admitted that he was still indebted to Arnold, cannot prejudice Evans. The latter was no party to the proceedings, and is not concluded by it.

"The answer of Knisely was doubtless unadvisedly made. Before answering as he did and submitting to judgment, he ought to have informed himself whether Arnold still held his note. He admitted to be true what was not true in fact; but he can not visit the consequences of his mistake upon Evans, who was in no way privy to its commission."

I have already said that in my opinion the transaction of the foreclosure of the mortgage on the notes and account described by the agreed statement of facts, and the transfer to Meday, and from Meday to The Fisher Electrical Manufacturing Company, passed the title to said notes and account to the said The Fisher Electrical Manufacturing Company. If that be true, then The National Vapor Stove & Manufacturing Company,

from the date of said transfer, owed the Fisher Electrical Manufacturing Company the amount due upon said notes and account, and did not owe The Fisher Electric Company.

It would then follow from the authority cited, that if The National Vapor Stove & Manufacturing Company or E. C. Manter,, receiver, had answered in the proceedings by the Buckeye Electric Company against The Fisher Elecrtic Company, that it or he owed the Fisher Electric Company after the date of said transfer, such answer would have been untrue. And if The National Vapor Stove & Manufacturing Company, or the receiver, had paid over to The Buckeye Electric Company the amount due upon said notes, it would have been no discharge of the indebtedness on the notes and account owned and held by The Fisher Electrical Manufacturing Company.

I am, therefore, of the opinion that when the writ of garnishee was served upon E. C. Manter, receiver, there was nothing owing by him or The National Vapor Stove & Manufacturing Company to The Fisher Electric Company.

But said debt was due and payable to The Fisher Electrical Manufacturing Company.

It therefore follows, as a matter of course, if that be true, that the money in controversy belongs to The Fisher Electrical Manufacturing Company, and that The Buckeye Electric Company got no interest therein by its attachment and writ of garnishee upon the receiver in this case.

The case of Corbett v. Littlefield, Sheriff, 84 Mich. 30 (47 N. W. Rep. 581) has been cited in support of the claim of The Buckeye Electric Company.

This was an action of replevin to recover possession of two horses. The action was brought by Corbett against the sheriff of Wayne County, Michigan, who held said horses under writs of attachment issued against the goods and chattels of Clifton E. Mayne.

The facts in that case, briefly stated, so far as necessary for my purpose, are these: On July 15th, 1887, Mayne, the owner of said horses, gave to George E. Baker a chattel mortgage upon said horses. Mayne and Baker were both residents of Douglass county, Nebraska.

The mortgage was duly filed in the office of the County Clerk of Douglass County, Nebraska, on October 1, 1887, as required by the statute of Nebraska.

On May 2, 1888, Baker assigned said mortgage to Corbett, the horses remaining in the possession and under the control of Mayne. Mayne, the owner of said horses, permitted a man named Nebro to take said horses for Mayne into the trotting circuit in different states. At the time of the levy of the attachment the horses were on the trotting circuit in Michigan.

There are quite a number of other facts in the case, but I think the facts as I have stated them are sufficient to illustrate the point that is claimed to be applicable to the case at bar.

Corbett, the plaintiff in the case, claimed the property by virtue of his chattel mortgage, the defendant, Littlefield, sheriff, claimed the property by virtue of the levy of attachment.

The parties to that suit both claimed a *lien* upon said horses; Corbett by virtue of his mortgage, and Littlefield, sheriff, by virtue of his levies.

The defendant, Littlefield, disputed the right of Corbett to maintain his *lien*, on the ground that the chattel mortgage given by Mayne had never been recorded in the state of Michigan.

The Supreme Court of Michigan in that case held, that the filing of the mortgage in the state of Nebraska had no validity beyond the jurisdic-

tion of said state, and that as between a *lien* by the mortgage and a *lien* by attachment by a citizen of the state of Michigan, that the preference should be given to the citizen of its own state. Long, J., in deciding the case, says: "It may be true that this mortgage lien was valid in Nebraska, and might have been enforced there as against creditors or even purchasers in good faith. It is the duty of the court to extend the principles of comity to our sister states, and to recognize generally the existence of liens under foreign statutes. But we are asked to give this mortgage priority of lien over the attachment levies.

"The recognition of the existence and validity of such liens by the foreign state is not to be confounded, however, with the giving them a superiority or priority over all other liens and rights justly acquired in this state merely because the former liens in the state where they first attached have there, by force of their statute, a superiority or priority."

It will be observed in that case that the court was deciding a question as to the priority of liens upon property. The property had been attached by a creditor of Mayne, and as the property of Mayne.

The court puts its decision upon the ground that the lien of the mortgage, although valid in Nebraska had no validity or binding force beyond the territorial limits of Nebraska, the state where it was given and recorded.

It further held that there was no statute of Michigan permitting or requiring the filing of such mortgage in the latter state, and the mortgage not having been executed and filed in Michigan, as provided by the laws of that state, was no priority as a lien upon the horses as against the levy of the attachment by a citizen of Michigan.

I am of the opinion that if the chattel mortgage given upon said horses had been foreclosed and the horses sold to Corbett under and by virtue of said chattel mortgage in the state of Nebraska, that said proceedings would have conveyed to Corbett the absolute title to said horses, and divested Mayne of any interest therein.

I am further of the opinion that if Corbett in that action had been able to claim said horses as the owner, after acquiring title by purchase under the foreclosure of the Nebraska mortgage, the Michigan court would have held that a creditor, attaching said horses as the property of Mayne, would have acquired no lien upon said horses.

The attaching creditor in Michigan only acquired a lien upon the interest of Mayne in said horses. If Mayne had been divested of any interest in said horses by an absolute sale thereof, either by proceedings to foreclose said mortgage or a voluntary conveyance to Corbett, he would have had no interest in said horses to attach.

And I am unable to see how it could make any difference to his title or interest in the horses whether a conveyance had been made through the intervention of the foreclosure of the mortgage or his voluntary conveyance of them.

If the mortgage had been foreclosed, and Mayne had been divested of his title in said horses before the levy of the attachment in Michigan, I am clearly of the opinion that the Nebraska mortgage would have cut no figure in that case.

If Mayne had been divested of his title to said horses, before the attachment was levied, the case would then be similar in my judgment to the case at bar.

In the case at bar it is agreed that upon the 8th day of January, 1894, by proceedings duly had, said chattel mortgage was foreclosed and said indebtedness, account and notes were under such proceedings duly sold and delivered to said Christian H. Meday.

A further stipulation in the agreed statement of facts is that on the

8th day of January, 1894, said Christian H. Meday, for a good and valuable consideration, duly sold and transferred said indebtedness and the account and notes evidencing the same to The Fisher Electrical Manufacturing Company.

I am therefore clearly of the opinion that at the time of the service of the writ of garnishee upon E. C. Manter, receiver, The Fisher Electric Company had no interest whatever in said indebtedness and the account and notes evidencing the same, and that, therefore, The Buckeye Electric Company acquired no interest or lien therein.

The Fisher Electrical Manufacturing Company claims that money or property in the hands of a receiver cannot be garnisheed, except by permission of the court appointing the receiver. This proposition is denied on the part of The Buckeye Electric Company.

The view that I have expressed as to the other questions in the case does not require me to pass upon that question, I will therefore leave it without expressing an opinion.

The Fisher Electrical Manufacturing Company will therefore have judgment in the amount of the funds in controversy.

Squire, Sanders & Dempsey, for The Buckeye Electric Co.

E. G. Johnson, for The Fisher Electrical Mfg. Co.