HUGHES, HYLLESTED & CO. *v.* KLINGENDER BROTHERS.—W. MURE, Intervenor.

The comity of nations extends only to enforce obligations, contracts and rights under those provisions of law of other countries which are analogous or similar to those of the State where the litigation arises.

A contract executed in England, by which a ship was transferred to a trustee to secure the rights of a third person, the vendor retaining possession of the ship, cannot be enforced in this State to defeat rights already acquired by an attachment under our laws.

A *vente à réméré*, like any other sale, is perfected as to third persons, in the case of movables, by delivery, and the vendee becomes the owner of the fruits and the property absolutely, if it be not redeemed at the time stipulated.

APPEAL from the Fourth District Court of New Orleans, *Price*, J.

*Benjamin, Bradford & Finney*, for plaintiffs. *H. T. Hays*, for defendant. *W. D. Hennen*, for intervenor and appellant.

MERRICK, C. J. This case was before us in January last, on the question of the right of the intervenor to bond the property attached. Ante, p. 52.

In the present case, the Bank of Liverpool, as vendee and trustee, claims the legal title of the ship.

The petition of intervention was dismissed on the trial in the lower court, and the intervenor appeals.

The case perhaps merits a synopsis of the instrument upon which the intervention is founded. It (the instrument) is of great length, and is under seal. It is signed by the defendants alone, and purports to have been executed on the 25th day of September, 1854.

In consideration of five shillings, and to secure the Bank of Liverpool, *Klingender Brothers* nominally sell to *Joseph Langton*, chief manager of said bank, his executors, &c., the ship *Warbler* in trust, that the same may be a continual security to the bank for the payment of costs, and for all sums of money due or to become due, by *Klingender Brothers* to the bank, and for loans, &c. Another clause authorizes *Langton*, the trustee, to sell the ship, and directs him to apply the proceeds, 1st, to costs, 2d, to amount due bank, and 3d, the remainder to *Klingender Brothers*. Another clause obliges the trustee, on satisfaction of the trust, to reconvey. The instrument contains other covenants on the part of *Klingender Brothers*, warranting title, relative to policies of insurance, &c., &c. The instrument is no doubt executed in conformity to the Acts of Parliament and the English law. See Abbot on Shipping, pp. 29 and 30, ed. 1854. Under that law, the intervenor would have been able in the English courts to protect himself against subsequent purchases and creditors, and the effects of bankruptcy. If it be admitted, that the intervenor has such rights upon the ship by the English law, the question naturally arises, why are not those rights entitled to be respected in Louisiana, particularly as all parties to this controversy have their domicil in England? It is not surprising that the question is repeated, and that the courts are again and again called upon to answer it.

The comity of nations extends only to enforce obligations, contracts and rights, under those provisions of law of other countries which are analogous or similar to those of the State where the litigation arises.

The instrument offered in evidence has no analogy to any mode known to our law of affecting personal property for the security of debts. It purports to sell

to one man, to protect the rights of a third person, and yet the vendor is to retain possession. The contract is not a sale, nor a pledge; for there is no delivery, which our law deems *essential* in order to perfect either contract as to third persons. As our law would not enforce a similar contract between our own citizens, if made here, it will not enforce it to defeat rights already acquired by the attachment under our own laws.

In the case of *Malcolm et al.* v. *The Schooner Henrietta*, this court refused to recognize a mortgage upon a ship, executed in the form of a conventional mortgage under our own law, and declared that our law only admits of the hypothecations of ships according to the laws and usages of commerce. 7 L. R. 488 ; ib. 486.

In the case of *Grant* v. *Fiot*, it was again declared, that instruments in the form of conventional mortgages on ships or vessels confer *no right or privilege whatever.* 17 L. R. 160.

The same doctrine was re-affirmed in *Hill* v. *The Phenix Towboat Co.*, 2 Rob. 35, in which the court mention, as the only valid hypothecation, that made to procure the necessary supplies for ships which happen to be in distress in *foreign* ports, when the master and owners are without credit, and in cases in which, if assistance could not be procured by means of such instruments, the vessels and their cargoes must perish.

The subject was again fully considered in the case of *Harned* v. *Churchman*, 4 An. 312, and it was there said : " It is the duty of courts in all commercial nations to extend the rule of national comity to bottomry bonds and such other maritime hypothecations as are recognized by the general assent of the commercial world. But the public policy of recognizing implied hypothecations or liens as following property from foreign countries may well be questioned."

In the case of *Wickham* v. *Levistones*, the effect of a common law mortgage executed at Cincinnati, and registered in accordance with the Act of Congress, was considered, and this court refused to give it effect, because " such a mortgage is not recognized by our laws." 11 An. 702.

In the case of the *Succession of Broderick*, 12 An. 522, we refused likewise to give effect to an act purporting to be a mortgage of a steamboat which was executed in this city, and recorded in the office of the Collector of the Customs, under the Act of Congress of 29th July, 1850 (9 Statutes at Large, p. 440).

In the case of *Swasey & Co.* v. *Steamer Montgomery*, 12 An. 800, we refused to recognize a privilege created by the law of Alabama, for tolls for passing a certain channel, and we there announced the general doctrine that privileges must be regulated by the law of the *forum*, and that none can be claimed except such as are given by the Civil Code and statutes amendatory thereof. See also on this subject Abbot on Shipping, ed. 1854, p. 156, and note 2, and authorities there cited. See also a similar case stated by Savigny, 8th vol., p. 196–197, sec. 368, Berlin edition.; C. C. 3204, No. 7 ; 19 Howard, 22 and 82.

It may also be remarked, that the hardship of the rule adopted by the courts is not so great, when it is considered that in the case of ships it usually happens, that the parties holding liens and mortgages in the home port, have had the opportunity of enforcing the same, and have voluntarily permitted the ship to depart, without so doing. It may also be further remarked, that the statute of 1858, p. 3, bars privilege upon ships after the lapse of six months.

But in this case, it is contended by intervenor's counsel, that the instrument is assimilated more to a *vente à rémeré* of our law, than a mortgage, and may be upheld by our courts in this form.

The *vente à réméré*, like any other sale, is perfected as to third persons, in the case of movables, by delivery, (which is wanting in the instrument under consideration,) and the vendee becomes the owner of the fruits and the property absolutely, if it be not redeemed at the term stipulated. Here *Langton*, so far from being owner, and making the fruits his own, had only authority, as an agent, to sell for the payment of debts. *Klingender Brothers* had received no serious *price*, and had nothing to return as such. C. C. 2414, 2439 ; 3 An. 278 ; 5 An. 99. The instrument cannot, therefore, be viewed in any other light than as a security for money.

There is a prayer, on the part of the appellee, for an amendment of the judgment in their favor, against the intervenor, so that the same shall be considered final. In order to avoid all doubt as to the effect of the judgment rendered, we will make the amendment.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be so amended as to reject and bar the demand in reconvention and third opposition of the said Bank of Liverpool ; and that said judgment so amended be affirmed, the appellant paying the costs of the appeal.