CHARLES CORBETT v. LOUIS B. LITTLEFIELD.

*Chattel mortgage—Filing—Conflict of laws—Priority of lien.*

A resident of Nebraska gave a chattel mortgage to a resident of the same state, who filed it under the law of that state, and left the property in the possession of the mortgagor, who brought it to Michigan without the knowledge or consent of the owner of the mortgage, where it was attached at the suit of the mortgagor's creditors. And it is held that the attachment lien must prevail over that of the mortgage. *Montgomery v. Wight,* 8 Mich. 143; *Boydson v. Goodrich,* 49 Id. 66.

Error to Wayne. (Hosmer, J.) Argued October 15, 1890. Decided December 24, 1890.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Sloman, Berry & Duffie,* for appellant, contended for the doctrine stated in the head-note, and cited the authorities therein cited.

*George W. Radford,* for plaintiff, contended for the doctrine stated in the charge of the trial judge, citing no authorities.

LONG, J.  This is an action of replevin to recover possession of two horses, known as "Tommy Linn" and "Dan D." The action is brought against the defendant, sheriff of Wayne county, who held them under three writs of attachment issued against the goods and chattels of Clifton E. Mayne. The cause was tried in the Wayne circuit court before a jury, where the plaintiff had verdict and judgment for six cents' damages, he having taken the property under the writ.

The plaintiff on the trial claimed to be entitled to the possession of the property by virtue of a chattel mortgage given by Clifton E. Mayne, the defendant in the attachment suits. The mortgage was given on July 15, 1887, to George E. Barker, and assigned by Barker to the plaintiff on May 2, 1888. At the time the mortgage was given, Mayne, the mortgagor, resided at the city of Omaha, Douglas county, Neb., and Barker, the mortgagee, resided at the same place. The mortgage covered other property besides these two horses, and the property is described in the mortgage as being upon the ranch of C. E. Mayne, called the "Platte Valley Stock Ranch," in township 16 N., range 9 E., of Douglas county Neb. The mortgage was duly filed in the office of the county clerk of Douglas county, Neb., on October 1, 1887.

The statute of Nebraska authorizing the filing in the county clerk's office was offered in evidence, and is as follows:

"Every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels hereafter made which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession, of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagors [mortgagees] in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the county clerk of the county where the mortgagor executing the

same resides, or, in case he is a non-resident of the state, then in the office of the clerk of the county where the property mortgaged may be at the time of executing such mortgage; and such clerk shall indorse on such instrument or copy the time of receiving the same, and shall keep the same in his office for the inspection of all persons; and such mortgage or instrument may be so filed, although not acknowledged, and shall be valid as if the same were fully spread at large upon the records of the county."

At the time the mortgage was assigned by Barker to Corbett, the two horses in question, and also a horse known as "Dr. West," were out of the state, in the possession of a man named Newbro, who had them in the trotting circuits for Mayne in the different states. They have never been returned to Nebraska, and were on the trotting circuit in Michigan at the time they were attached for the debts of Mayne.

On June 12, 1888, it is claimed, Mayne sold the horses to one John Riley, and gave Riley a bill of sale, subject to the chattel mortgage then held by Corbett; and Riley made an agreement, it is claimed, with Corbett to release the chattel mortgage on the horses by the payment of $1,000; and it was claimed on the trial that Riley had possession of the horses at the time they were attached. It also appears that on May 1, 1888, an agreement was entered into between Corbett and Mayne, by which Mayne acknowledged the validity of the claims for which the mortgage was given, and authorized Corbett to purchase them.

On the part of the defendant it was contended—

1. That the mortgage was fraudulent in fact.
2. That, even if not fraudulent in fact, it was void as to those attaching creditors of Mayne, for the reason that it was not filed in Detroit or in Michigan.
3. That the bill of sale to Riley was nothing more than a mortgage, and a fraudulent one at that.

These were the issues which were presented to the court and jury. On the trial below, many of the questions raised were questions of fact, which, under the charge of the court, were fairly submitted to the jury for determination. Sixteen requests were presented by defendant's counsel to the court to give in charge to the jury, the most of which relate to the necessity of the refiling of the mortgage in this State. Some of those were covered by the general charge of the court, and others were not given and were refused.

The important question in the case arises under the defendant's second point that the mortgage was not filed in this State, and many of the requests to charge were aimed at this point. The court in its charge to the jury, giving construction to the Nebraska statute relative to chattel mortgages, directed the jury that they must hold the chattel mortgage as fraudulent and void, as the property remained in the possession of the mortgagor, unless the plaintiff had shown by a preponderance of evidence that it was an honest security, and not taken with intent to hinder, delay, or defraud the creditors of Mayne; but if they found that the agreement of May 1, 1888, between Corbett and Mayne, by which Corbett was induced to purchase the mortgage, was executed in good faith, for the purpose of procuring Corbett to purchase the mortgage, then, though the mortgage was fraudulent in its inception as between Barker and Mayne, the mortgage as to Corbett would be valid, if Corbett, relying upon the representations made in the agreement, and acting in good faith, purchased it.

The court further in its charge, speaking of the Michigan statute relative to the filing of chattel mortgages, directed the jury that, though they found the mortgage valid in the hands of Corbett, yet, if he permitted the

84 MICH—3.

property to be brought into this State, it then became subject to the levy of the attachments in the hands of the sheriff, and the chattel mortgage would be no protection to the plaintiff, as the mortgage was not filed within this State; but that, if the property was brought out of the state of Nebraska, and into the State of Michigan, without the knowledge or consent of Corbett, and as soon as he found that it had been brought out of that state, and into this, he took steps to reclaim it, then his rights as mortgagee would be preserved.

Upon the question of the rights of Mr. Riley under the bill of sale, the court directed the jury that if the bill of sale was made in good faith, and not with intent to hinder, delay, or defraud creditors, and that, acting under the conveyance, Riley took possession of the horses in this State, that would end the case, though the chattel mortgage was fraudulent and void as between Corbett and Mayne, as they could not be attached for the debts of Mayne, though the sheriff would then be entitled to nominal damages. Substantially these are the material parts of the charge.

The jury, by their verdict, have found that the property was brought out of the state of Nebraska and into this State without the knowledge or consent of Corbett. The question is therefore presented whether this chattel mortgage can be held to protect the plaintiff's rights in the property, even though not filed within this State, by reason of the bringing of the property out of Nebraska and into this State without the knowledge or consent of the mortgagee.

Our statute (section 6193, How. Stat.), like the Nebraska statute, provides that such conveyances shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in

good faith, unless filed, where there has been no delivery of the property to the mortgagee, and that followed by an actual and continued change of possession of the thing mortgaged. The filing, to be effective, must be in the town-clerk's office, or city clerk of the city, or recorder of the city, having no officer known as "city clerk," where the mortgagor resides, except when the mortgagor is a non-resident of the State, in which case the mortgage is to be filed in the clerk's office where the property is. The relation between the mortgagor and mortgagee is that of debtor on one side and creditor on the other, secured by a lien upon the property of the debtor. The title to the property can only be divested by foreclosure or some act equivalent thereto.

It may be true that this mortgage lien was valid in Nebraska, and might have been enforced there as against creditors, or even purchasers in good faith. It is the duty of courts to extend the principles of comity to our sister states, and to recognize generally the existence of liens under foreign statutes. But we are asked to give this mortgage priority of lien over the attachment levies. The recognition of the existence and validity of such liens by the foreign state is not to be confounded, however, with the giving them a superiority or priority over all other liens and rights justly acquired in this State merely because the former liens in the state where they first attached have there, by force of their statute, a superiority or priority. This distinction was pointed out by Chief Justice Marshall in delivering the opinion of the Court in *Harrison v. Sterry*, 5 Cranch, 289. He there said:

"The law of the place where a contract is made is, generally speaking, the law of the contract; *i. e.*, it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It

is extrinsic, and is rather a personal privilege, dependent on the law of the place where the property lies, and where the court sits which is to decide the cause."

There is no provision of our statute by which this mortgage at the time of its execution could have been filed in this State, and the Nebraska statute did not authorize it, and, even if it had, it would not have had any force beyond the sovereignty enacting it. The mortgagor then resided in Nebraska, and the property was situate there. It would be unreasonable to require a citizen of Michigan to take notice of the files and entries in Nebraska. These notices have no extraterritorial force. *Montgomery v. Wight*, 8 Mich. 143. The mortgage having been properly filed under the statutes of Nebraska, the lien thereby created would undoubtedly have been held by the courts of that state as prior to any lien which creditors might acquire, if the mortgage was not fraudulent in fact, though the mortgagor retained possession of the property mortgaged. But, by the terms of the mortgage, the mortgagee had a right at any time to take possession without notice, and Corbett, by the assignment, acquired all the rights which Barker had. Instead of taking possession, he permitted the property to remain in the possession and under the control of the mortgagor, thereby clothing him with all the *indicia* of ownership. This ownership, however, was subject to the lien of the mortgage so long as the property was kept in Nebraska, as the filing of the mortgage there was notice of the lien. But, when the property is moved into a foreign state, the filing in Nebraska cannot be said to be notice to creditors of the mortgagor in such foreign state of the lien of the mortgage, as that statute has no extraterritorial force.

The court was in error in holding that, the property being brought out of Nebraska and into this State, with-

out the knowledge and consent of Mr. Corbett, such fact would give the mortgage lien priority over the attaching creditors. That question arose in *Boydson v. Goodrich,* 49 Mich. 66, and was expressly ruled the other way. In that case the plaintiff resided in Indiana. Warren, the mortgagor, also resided there, and the mortgage was given there. Without the knowledge or consent of the plaintiff, Warren, the mortgagor, brought the property into this State and sold it. In an action of replevin against the purchaser, it was said by this Court:

" Counsel for plaintiff argues that the rules of state comity are against the defendant, and give the foreign transaction preference. But the law seems to be settled otherwise in *Montgomery v. Wight,* 8 Mich. 143.  *  *  * The plaintiff allowed the mortgagor to retain possession, and to appear to the world as well authorized to convey an unincumbered title, and no means of information were provided in this State to impeach this appearance."

In the present case it appears from the very terms of the mortgage that Mr. Corbett had it in his power to protect himself by taking possession of the mortgaged property. This he failed to do, but permitted the property to remain in the possession of the mortgagor, relying upon the filing of his mortgage as notice, under the Nebraska statute, sufficient to protect his lien. It can have no such effect here as against the creditors of the mortgagor, and the court should so have instructed the jury. We find no error in the other portions of the charge. We need not discuss the other questions raised.

The judgment must be reversed, with costs.

The other Justices concurred.