VINING *v.* MILLAR.

CHATTEL MORTGAGES—DELAY IN FILING—RIGHTS OF INTERVENING CREDITORS.

> An intervening creditor does not lose the right to avail himself of 2 How. Stat. § 6193, making a chattel mortgage, unaccompanied by change of possession, invalid as against a creditor whose claim accrues between the execution of the mortgage and the filing thereof, by taking a chattel mortgage to secure his claim under circumstances not entitling him to protection as a subsequent good-faith incumbrancer; nor is such right affected by his failure either to take possession by virtue of his mortgage, or to have the same properly filed.

Error to Wayne; Frazer, J. Submitted January 4, 1898. Decided March 15, 1898.

Replevin by James B. Vining and Donald Ferguson against Charles Millar and David W. Fox. From a judgment for plaintiffs, defendants bring error. Reversed.

*Moore & Moore*, for appellants.

*F. L. Brooke* (*Thomas S. Jerome*, of counsel), for appellees.

MOORE, J. This case has been here before, and is reported in 109 Mich. 205, where there is a full statement of the case as it was made in the first trial. Some new features are involved in this hearing, and, in addition to the statement of facts contained in the reported case, it is necessary to state further what occurred. On the second trial it was claimed by plaintiffs that when Vining fell sick, and was unable to remain with the horses personally, Stilson was put in charge of the horses, and was to have the same authority that Vining, up to that time, had exercised. Construing the testimony in the most favorable light possible to the plaintiffs, there is nothing in the

record to show that when Leroy gave his mortgage to the plaintiffs, or at any time afterwards, and before Leroy gave the mortgage to Millar, plaintiffs took possession as mortgagees, or that Vining or Stilson had any other possession than as representing George Leroy & Co., and for the purpose of accomplishing the purposes of the partnership. Nor is there any testimony that Leroy surrendered his right to possession as a partner. Additional proof was given upon the question of the possession given to Millar and Briggs shortly after the mortgage to Millar was given. A judgment was rendered upon the verdict in favor of plaintiffs, from which judgment defendants appeal.

It will be observed that the mortgage to the plaintiffs was given October 11, 1892. It was not filed anywhere until July 17, 1893. June 30, 1893, Millar let Leroy have $230, and between then and July 5th other sums, until $727.25 had been furnished him in all. The chattel mortgage was executed about midnight of June 30, 1893. It bears date July 5, 1893, and was recorded on that day. It is now claimed that, irrespective of the other questions in the case, a verdict should have been directed in favor of defendants, for the reason that plaintiffs' mortgage, being unrecorded, was void as against the defendant Millar, who was a subsequent creditor as well as a subsequent mortgagee, and that this is in accord with 1 Revised Statutes of Ontario, 1887, chap. 125, § 4 (*River Stave Co. v. Sill*, 12 Ont. 557; *Marthinson v. Patterson*, 20 Ont. 125, 720), and also in accord with the laws of Michigan (2 How. Stat. § 6193; *Boydson v. Goodrich*, 49 Mich. 65; *Root v. Harl*, 62 Mich. 420).

In *Crippen v. Fletcher*, 56 Mich. 386, it was said:

"We have heretofore held that a chattel mortgage not seasonably filed is void, and not merely presumptively void, against creditors whose rights intervene between the making and filing. *Haynes v. Leppig*, 40 Mich. 607; *Fearey v. Cummings*, 41 Mich. 383; *Hurd v. Brown*, 37

Mich. 484; *Cummings* v. *Fearey*, 44 Mich. 39; *Waite* v. *Mathews*, 50 Mich. 392; *Wallen* v. *Rossman*, 45 Mich. 333. The law does not require previous proceedings to exhaust other remedies."

The case of *Dempsey* v. *Pforzheimer*, 86 Mich. 652 (13 L. R. A. 388), is much in point. October 22, 1886, Harris & Karpp borrowed of Mr. Borgess, plaintiff's decedent, $2,000, and gave him a chattel mortgage on the same day, which was not recorded until December 26, 1887. Between the date of the giving and filing of this mortgage, the defendants, who were residents of New York city, sold Harris & Karpp goods, to secure the payment of which they took a chattel mortgage on December 30, 1887, which was filed the same day. Afterwards the defendants took possession of the stock under this mortgage. While they were in possession, demand was made on them for the stock by the holder of the first mortgage. They denied its validity, and sold the goods under their mortgage. Plaintiff brought trover for a converson of the stock, and recovered a judgment. This court reversed that judgment, and in the opinion said:

"It is plain, under the rulings of this court, that the Borgess mortgage was void for want of filing as against the original indebtedness of Harris & Karpp to defendants, incurred while the mortgage was in existence and not filed, and for goods sold by defendants in the usual course of business, in ignorance of the existence of such mortgage. *Fearey* v. *Cummings*, 41 Mich. 383; *Wallen* v. *Rossman*, 45 Mich..333; *Waite* v. *Mathews*, 50 Mich. 392; *Talcott* v. *Crippen*, 52 Mich. 633; *Crippen* v. *Fletcher*, 56 Mich. 386; *Root* v. *Harl*, 62 Mich. 420; *Johnson* v. *Stellwagen*, 67 Mich. 10; *Brown* v. *Brabb*, Id. 17 (11 Am. St. Rep. 549); *Cutler* v. *Steele*, 85 Mich. 627.

"If the defendants, before taking their mortgage, and after the filing of the Borgess mortgage, had proceeded against the property so mortgaged, and obtained by any process of law a lien upon it, or had they obtained judgment upon their claim, and issued execution, and levied on it, there can be no doubt but such lien or levy would have been good as against the Borgess mort-

gage. But it is claimed on behalf of plaintiff that, because defendants took a mortgage to secure the indebtedness to them after the Borgess mortgage was put on file, and therefore had notice of it, they cannot now claim the benefit of the rule adopted by this court as shown above, and that they have no standing under the statute upon which the rule is founded. It is contended that, to avail themselves of the statute, the defendants, at the time of seizing the goods in question, must have the standing either of 'creditors of the mortgagors,' or of 'subsequent purchasers or mortgagees in good faith;' that they cannot claim as subsequent mortgagees in good faith, because they took their mortgage with full notice of the Borgess mortgage, which had then been on record for four days; and that the benefit of the statute cannot be invoked in favor of creditors, except by those who have a lien by process of law upon the property in question. And it is argued that a mortgage lien will not avail, except, perhaps, in equity. We are cited to *People's Savings Bank* v. *Bates*, 120 U. S. 560, and other cases, in support of this contention. But we can see no difference between a lien obtained by process and one gotten by consent of the owner through a chattel mortgage. If the defendants were entitled, as they undoubtedly were, to obtain a lien upon this property by legal process, and to hold it to the amount of such lien against the mortgage of Borgess because the debt they were seeking to collect was contracted while this mortgage was withheld from record, we can see no reason in principle why they cannot hold the property under a lien obtained by chattel mortgage to secure the same indebtedness."

The court then enters upon a full review of the cases, saying:

"It would seem to be settled in *Root* v. *Harl*, 62 Mich. 420, that, when an assignment is made by a debtor for the benefit of creditors, such creditors as are the defendants in this case can, upon the equity side of the court, attack the unrecorded mortgage, and obtain a preference over it, although they have no lien whatever upon the debtor's property; and that they are not 'general creditors' in such a sense that they cannot attack the mortgage without first obtaining a lien, by legal process or otherwise. If this is so, why cannot such a creditor, who has obtained a mortgage lien upon the property, and pos-

session under it, defend against a void mortgage, without resorting to legal process against the property? And why should he be compelled to relinquish his possession under such mortgage lien, or pay the amount of a void mortgage? In my opinion, there is no equity or justice in the plaintiff's claim in this case, and no law under which he can enforce it."

The opinion concludes:

"Under the facts as stipulated, the defendants were entitled to the possession of the property as against the plaintiff, and to make their claim out of it by a sale of the property under such mortgage."

See *First Nat. Bank* v. *Guntermann*, 94 Mich. 125.

Counsel state in their brief: "Even had plaintiffs not had possession of this property before, they might, on its arrival in Michigan, complete their inchoate lien by filing their mortgage, or by taking possession, as they did;" citing *Waite* v. *Mathews*, 50 Mich. 392. A reference to this case shows that the debt which was attempted to be secured by a judgment levy was a debt made before the giving of the chattel mortgage. In the opinion Justice CAMPBELL says:

"The other question was substantially decided in *Kohl* v. *Lynn*, 34 Mich. 360, and *Fearey* v. *Cummings*, 41 Mich. 376, where it was distinctly intimated that, in order to justify the application of the statute making mortgages, whether honest or not, absolutely void for want of filing or possession, some act must be done, or some detriment sustained, during the interval. As against all such rights, a mortgage without such possession or filing is absolutely, and not merely presumptively, void; while conveyances not by way of mortgage are only presumptively void, under such circumstances."

Defendant Millar was a subsequent creditor, in possession of the property under his mortgage, seeking to enforce the lien given to him by it, when the plaintiffs replevied it. Their mortgage was void as to him. The circuit judge should have directed a verdict in his favor to the amount of his indebtedness, but not exceeding the

value of the interest of Mr. Leroy in the property.     Mr. Millar's mortgage, even though it was not properly filed, and though he had not taken possession of the property by virtue of it, was not void as to the mortgage of plaintiffs, for the reason that they were neither subsequent creditors nor subsequent incumbrancers.     Their debt accrued and their mortgage was given prior to the making of the Millar mortgage, and does not come within the provision of the statute.

Judgment is reversed, and new trial ordered.

MONTGOMERY, HOOKER, and LONG, JJ., concurred. GRANT, C. J., did not sit.