## Harvey Montgomery v. Henry A. Wight and another.

Under the Canadian statute (20 *Vic.* c. 3, §4,) which requires that a mortgage of chattels "shall contain such efficient and full description thereof that the same may be thereby readily and easily known and distinguished," a mortgage of a horse, describing it simply as "one sorrel horse," is, as to others than the parties °to it, void for want of a sufficient description.

Laws for recording chattel mortgages can have no force beyond the jurisdiction of the sovereignty enacting them; and the record of a chattel mortgage in Canada is, therefore, no notice to the creditors of the mortgagor who shall find the property in his possession in Michigan. And neither the statute ,of Canada nor of Michigan dispenses with the necessity of possession by the mortgagee, except where notice can be rendered effectual by recording the mortgage.

Where, therefore, a chattel mortgage, given by a resident in Canada, was properly put upon record as required by the Canadian law, but the mortgagor was left in possession of the mortgaged property, and brought the same into this state, where it was taken and sold on execution against the mortgagor;—*Held*, that the title under the execution sale must prevail over that under the mortgage.

*Heard May 4th. Decided May 12th.*

Case reserved from Wayne Circuit Court as follows:
"This was an action of replevin, brought to recover one chestnut stallion called *Jacksonian.*"

"There was evidence that on the 20th of March, 1858, F. W. Backus was the owner of the horse in question; that on that day he executed a chattel mortgage — but without any change of possession of the property — conveying this and other property to S. P. Brady. The mortgage was duly filed in the clerk's office of the city of Detroit, and was in force and unpaid on the 11th of August, 1858. Prior to that time, and after May, 1858, Backus removed a part of his property, and this horse included, to the town of Anderdon, Canada, with the intention of residing, and resided there without his family until December, 1858, when his family joined him, and he became a permanent resident. On the 11th of August he executed a mortgage, also without change of possession, to the plaintiff, to secure a *bona fide* indebtedness. By this mortgage several horses are conveyed; they are therein described as follows: "One brown mare, one sorrel horse,

one bay horse, one brown colt;" and after describing household goods and other property, the description concludes with these words: "and all other goods and chattels and personal property now being at the residence of said Backus, in Onslow Cottage, in the township of Anderdon." This mortgage was executed, verified and filed, in accordance with the statutes of Canada relating to chattel mortgages, which statutes being the laws of Canada for 1857, are by consent considered a part hereof, and were in evidence, and are sent herewith.

"It was in proof on the trial, subject to objection, that on the 11th of August, 1858, Backus had no other chestnut or sorrel horse; that the horse replevied was then — at the time of the mortgage to plaintiff — a sorrel, but had changed in color, and become at the time of the replevin a chestnut. And that the horse was then, i. e. when mortgaged to plaintiff, at the place of Backus, and that Backus had not there, or at any place in Canada, any other sorrel or chestnut horse.

"It was also in evidence that on the 20th day of March, 1859, the mortgage so given to Brady had become void for want of a renewal thereof, as provided for by the statutes of this state.

"It was in proof that Backus brought the horse to Detroit, on the 2d day of May, 1859, for the purpose of having him trained, where he remained until replevied; that the defendants, having a judgment against Backus, issued execution thereon, and levied upon this horse on the 16th day of June, 1859; they became the purchasers at the execution sale, and held the horse by virtue thereof at the date of the writ of replevin.

"Upon these facts the following questions arise and are reserved for the opinion of the Supreme Court thereon:

"1. Was it competent for Backus to execute the mortgage to Montgomery while the Brady mortgage was in force and unpaid?

MONTGOMERY v. WIGHT.

"2. Was the description of the property contained in the Montgomery mortgage sufficient to render the mortgage valid under the statutes of Canada, above referred to?

"3. Was it competent to aid the description by the parol proof which was received subject to objection, and hereinbefore mentioned?

"4. If the mortgage given by Backus to Montgomery was valid under the statutes of Canada, did the lien thereby created cease when the property was brought into the state of Michigan?

"5. Did the mortgage given to Montgomery, if valid under the laws of Canada, protect the property, when brought into the state of Michigan, from levy and sale under the defendant's execution?

"6. If the mortgage given to Montgomery did not protect the property from levy and sale under the defendant's execution, would said levy and sale take priority of said mortgage?"

*W. Gray*, for plaintiff:

The description in the mortgage is sufficient. The statute (*Stat. Canada*, 1857, *p.* 7), is not to be construed as requiring the most perfect possible description, for that would defeat all mortgages. The statute only requires good faith, and is merely directory in this particular:— *Rose v. Scott*, 17 Q. B. (*Canada*) 385. And it is proper to aid the writing by parol proof which does not contradict it. The testimony given was also admissible for the purpose of identity.

If the mortgage was valid in Canada, the lien did not cease when the property was brought here. The true doctrine is this: If a contract made in one country is against the law or policy of another, it will not be enforced in the latter; but if valid where made, and might be made in the latter, it will be enforced:— *Story Confl. L.* §§ 326, 327. See 3 *Mich.* 123. A mortgage made in

New Hampshire was held invalid against the property in Vermont, when found there in possession of the mortgagor (23 *Vt.* 284), because a mortgage without change of possession could not be made in Vermont. The mortgage was therefore against the law and policy of that state: 11 *N. H.* 64; 10 *N. H.* 46.

*Wells & Hunt,* and *H. D. Terry,* for defendants:

The description in the mortgage was insufficient:—*Rose v. Scott, supra*; *Lawrence v. Evarts,* 7 *O. S. R.* 194.

But if the mortgage was good in Canada, the lien ceased on the property being brought here. Though our courts are bound to recognize the existence of the liens under the foreign statute, they are not to give them a priority over other liens acquired under our own statutes: — *Story Confl. L.* §§ 323, 324, 325*d*, 325*k*, 326, 327, 388, 389; 15 *Pick.* 11; 13 *Mass.* 146; 5 *N. H.* 213; 9 *Vt.* 358; 11 *N. H.* 55; 23 *Vt.* 279. At the common law, and independant of the Canadian statute, the Montgomery mortgage would be absolutely void, for it could not be filed here. ' Can the Canadian statute change the rule here? Does the comity of nations require that it should have such an effect? And that the courts of this state should hold that it defeats the liens acquired by our own citizens upon the property of a debtor found here? We think not.

CAMPBELL J.:

The questions arising in this case, all go to the inquiry whether the mortgage, made by Backus to Montgomery, takes precedence of the execution sale against Backus, whereby the property was sold.

The mortgage from Backus to Montgomery was made in Canada, and, in order to be valid at all, must be sustained under the laws of Canada. It is claimed by the defendants that, under those laws, the description of the horse in controversy is insufficient.

By the Canadian statute of 20 *Vic. C.* 3, § 4, it is declared that a mortgage of chattels, " shall contain such efficient and full description thereof, that the same may be thereby readily and easily known and distinguished."

The description in the mortgage before us is " one sorrel horse." In the case of *Rose v. Scott*, 17 *Q. B.* 385, the court of Queen's Bench of Upper Canada had occasion to apply the provision of the statute above quoted, to a chattel mortgage containing the following description, viz: " seven horses, three lumber wagons, one carriage, one pleasure sleigh, all the household furniture in possession of the said party of the first part, and being in his dwelling house; all the lumber and logs in and about the saw mill and premises of the said grantor, and all the blacksmith's tools now in possession of the said party of the first part; six cows and four stoves." The court held that nothing but the furniture, lumber and logs, could pass, as none of the other articles were described in such a way as to enable a person to ascertain their identity by inspection or inquiry, and distinguish them from other similar articles. We do not perceive in the description before .us any way of distinguishing this sorrel horse from any other sorrel horse in the province, and are very well convinced that the instrument would be so construed by the Canadian courts, upon the authority cited. The object of the statute is to prevent purchasers and creditors from being deceived by ambiguous descriptions, the allowance of which would encourage fraud, and render it easy to substitute one chattel for another. As this horse had a name, that would have furnished a ready description. And any hint which would have directed the attention of those reading the mortgage to any source of information beyond the word of the parties to it, would at least have been much more satisfactory. The provision in the statute was, as is remarked in *Rose v. Scott*, "to enable third parties to ascertain what was intended to be assigned." The statute is certainly a wise one,

and should be so construed as to make it effectual.   As between the parties, the same difficulties are not likely to arise.

A more serious question, however, is whether the mortgage, if sufficiently certain, could yet avail against the levy. The defendants claim that it must yield to their execution title.   The plaintiff, however, insists that we are bound by comity to protect his rights; and that his mortgage is valid here, to all intents and purposes, if valid in Canada.

We certainly should be very reluctant to deny to any party any right legally assured to him under the laws of our neighboring province, even if our common origin and friendly associations did not make the duty of extending the principles of comity a cheerful one.   And in holding, as we are compelled to in this case, we are glad that we find no incompatibility between our own laws and those of Canada.   We regard them both as aiming to accomplish the same object in very much the same way.   They are substantially alike.

The evil which both statutes found in existence, was the facility for fraud held out by allowing mortgagors of chattels to retain possession under any circumstances.   By permitting the mortgagee to hold, if he took his security in good faith, the law formerly subjected subsequent purchasers from the mortgagor to all the danger arising from his fraud, although he was enabled to perpetrate it by the permission to retain possession given him by the mortgagee. At the same time there were many cases where it was very necessary to the mortgagor to be enabled to keep possession.   In order to provide for such emergencies, and at the same time protect creditors and purchasers from fraud, our statutes declare that a chattel mortgage shall be void as against them, without an actual and continued change of possession, unless the mortgage is recorded by filing a copy, with us in the city or town, and in Canada, in the proper county office.   And here, as there, an affidavit of renewal must be made yearly.

This provision for filing or registry is not intended by any means to encourage or legalize the practice of making mortgages without possession. The statute now as before, regards change of possession as the rule, and allows filing to dispense with its necessity, because filing is public notice. But we can not suppose that either statute was designed, or can be properly construed, to dispense in any case with filing and change of possession also. If a chattel mortgage of property here is made by a non-resident, our law contains no provision for filing it. In such a case a change of possession is therefore essential, and can not be dispensed with against creditors or purchasers. The Canadian law contains a provision for filing in the county where the property is, if the mortgagor is a non-resident, and also contemplates a new filing, if the property is removed from county to county. These provisions are ample, where the property continues within the jurisdiction. But neither law undertakes to provide for any notice to be effectual if the property is elsewhere, and in such contingency, the prohibition of retaining possession must be absolute, so far as it can apply at all.

We must assume that these laws were passed in view of the well settled principle, that a law can have no binding force beyond the jurisdiction of the sovereignty enacting it. A resident of Canada, while dealing in Canada, for a chattel, can not be supposed to know the law of Michigan, or to be obliged to take notice of the records in a Michigan office. A statute of Michigan requiring him to do so would be of no validity beyond our own borders. And it would be equally unreasonable to require a citizen of Michigan, at home, to take notice of files and entries in Canada. These notices can have no extra territorial force. Proceeding upon the principle that the laws must have a sensible construction, we feel constrained to hold that the rules of these laws which require a change of possession, dispense with it only where an effectual notice may be

given. If mortgagees desire to be protected where no notice can be made effectual, they must take possession, and not allow the mortgagor to take the property where third parties have no means of ascertaining its title.

In the view we have taken of these laws, no conflict arises, and we regard our ruling as sustaining the policy of both countries.

It must be certified, that the mortgage of plaintiff is invalid as against the levy and sale under the defendant's execution, and that the latter must be allowed priority. The other questions become immaterial.

The other Justices concurred.