ALLISON *v.* TEETERS.

1. CHATTEL MORTGAGES—EQUITABLE REMEDIES—ELECTION.
   Under a chattel mortgage executed and filed in the State of Indiana, plaintiff commenced foreclosure of the property, a horse, by complaint: the case proceeded to judgment, which the mortgagor agreed to pay or to turn over the horse before a specified date. He did not surrender possession to plaintiff as agreed, but sold the mortgaged property, which was removed to Michigan, and was conveyed to defendant, a purchaser in good faith, without notice of the mortgage lien. The instrument was never filed in this State: it contained a clause authorizing the mortgagee to take possession of the horse in case of default, and thereupon it should become his absolute property. In the foreclosure proceedings a sale was held pursuant to the order of the court, and plaintiff bid in the horse. *Held,* that, since the purchaser in Michigan obtained title in good faith, plaintiff could not, after foreclosing, exercise his option and take possession under the mortgage, no evidence being produced to show what the law was in the State of Indiana.

2. CHATTEL MORTGAGES.
   Persons dealing with the apparent owner of personal property in Michigan are not required to consult the records in another State; without a transfer of the possession of mortgaged property, subsequent purchasers in good faith are not affected by the existence of a mortgage not recorded in this State.

Error to Berrien; Bridgman, J. Submitted April 28, 1913. (Docket No. 56.) Decided July 9, 1913.

Replevin by James Allison against Ira Teeters for a bay stallion. Judgment for plaintiff. Defendant brings error. Reversed.

*Coolidge, Riford & White,* for appellant.

*Burns & Hillman* and *J. H. Bibler,* for appellee.

OSTRANDER, J. Plaintiff at one time owned the horse which defendant claims now to own, and on March 23, 1910, sold it to one James F. Campbell, taking a chattel mortgage on the animal because a part of the purchase price was not paid. The mortgage was recorded in Fulton county, Ind., where the horse then was, on April 8, 1910; the vendee having possession of the horse. In December, 1911, the mortgagee began proceedings in the circuit court for said Fulton county to foreclose the mortgage, the complaint seting forth that said Campbell by his promissory note, made March 23, 1910, promised to pay plaintiff $600 one year after date, and to secure payment executed to plaintiff a chattel mortgage on two described horses, one of them the horse in question, that the note is past due and the conditions of the mortgage broken. The relief prayed for is a judgment for $300, the foreclosure of the mortgage, and an order for the sale of the property therein described. The defendant answered the complaint, and later, and on April 22, 1912, judgment for plaintiff for $230.75 was entered, the mortgage was declared to be foreclosed, and the property therein described was ordered to be sold to satisfy the costs and judgment. A præcipe or writ was issued, directed to the sheriff of said county, by virtue of which, as appears by his return, he sold the property September 17, 1912, at public auction to the plaintiff for $297.05 and returned the writ satisfied.

The testimony tends to prove that when the writ was issued to the sheriff, which was May 7, 1912, the horse was in Campbell's possession. The sheriff did not take the horse, and plaintiff arranged with Campbell that the horse should be turned over to plaintiff, or the judgment paid, on August 14, 1912. Before that date, and after August 10th, Campbell sold the horse to one Jack Prior, who sold it to his brother, Milo Prior, who took the horse to Niles, Mich., on August

21st, put him in a stable and traded him to defendant August 27th for a three-year old colt, worth perhaps $150, and $125 cash. With the horse said Milo Prior gave a bill of sale, warranting his title. Defendant had no knowledge of plaintiff's interest. Plaintiff finally found the horse in defendant's possession, demanded possession, which was refused, and began this suit. Upon the ground that he was a bona fide purchaser of the horse, defendant asked for a peremptory instruction in his favor. Denying this, the court advised the jury that plaintiff, and not Campbell, had the title to the horse after default, and therefore neither Campbell nor the Priors had any interest to convey to defendant. A verdict for plaintiff was directed.

Apparently, this ruling was grounded upon the provision in the mortgage that Campbell should retain the possession of the horse until the note "hereby secured becomes due," and if it is not paid at maturity "said James Allison shall then have the right to take and keep possession of said property wherever it may be found, without any process of law, and the same shall become the absolute property" of the mortgagee. If we have apprehended the reason for the ruling, it is not, in our opinion, a sound one. We need proceed no further than to say that it appears that the mortgagee, after default, did not exercise, or seek to exercise, any right based upon this provision of the mortgage. On the contrary, without retaking or seeking to retake the animal, he instituted proceedings to foreclose the mortgage, secure a judgment, and sell the horse in satisfaction thereof. Without retaking the horse, he became the purchaser at the execution sale which was made after defendant had bought the horse. We notice, too, that the mortgage gives the mortgagee power, upon breach of the conditions of the mortgage, to retake the property and to sell it to the highest bidder.

But it is contended by the appellee that the ruling of the trial court is right and should be affirmed because (1) Campbell, under the law of Indiana, had never any title which he could convey, the execution and delivery of the chattel mortgage operating as a conveyance of the absolute title to the mortgagee; (2) by the terms of the mortgage Campbell was a bailee of the horse and could convey no title to it; (3) having agreed with plaintiff to deliver him the horse on a day certain, Campbell was thereafter the agent of plaintiff and held possession for him; (4) the judgment, or decree, of the Indiana court foreclosing the mortgage barred the rights of Campbell in the property and should be held by the courts of this State to be conclusive of Campbell's and of defendant's rights. These propositions may be considered together.

It does not appear that any one having knowledge of the law of Indiana testified to the state of the law upon the point relied upon. It does appear that various reports of the opinions of the supreme court of that State were introduced in evidence. It was held in *Lee* v. *Fox*, 113 Ind. 98 (14 N. E. 889), that:

"A chattel mortgage is at law a conditional sale, which vests the legal title, and prima facie the right of possession, to the things mortgaged in the mortgagee"—referring to previous decisions of the court.

The same case also affirms the doctrine that the right of the mortgagor to discharge the mortgaged property from the claim of the mortgagee after condition broken is abundantly settled.

"Unless the right to redeem has been waived, the mortgagor may assert his right at any time after forfeiture, and before the mortgage has been foreclosed, by paying or tendering the debt and interest, and redeeming the title. This right is called his equity of redemption, which may be barred or foreclosed in either of two ways, at the election of the mortgagee.

It may be foreclosed by a decree in chancery, or by taking possession of the mortgaged property, and selling it at public auction, in pursuance of legal notice to the mortgagor."

We are not attempting by this reference to the decisions of the supreme court of Indiana to ourselves determine the state of the law in that jurisdiction at the time the chattel mortgage was given. *Lee* v. *Fox* was decided in 1887, and, if the point was material, the law may have been changed since the decision was rendered. Assuming the law to have remained without change, and that in legal effect there was a sale of the horse by Campbell, the mortgagor, to plaintiff, the mortgagee, there was no change of possession of the thing sold.

In this State, and, it may be inferred, in Indiana, when chattels are sold or mortgaged and are not delivered, something is required to stand in the place of change of possession, or else creditors of, and subsequent purchasers from, the vendor, without notice, dealing with the property, are not affected by the sale or mortgage. In jurisdictions where anything is permitted to take the place of the usual change of possession of chattels claimed to have been sold or mortgaged, a public filing or recording of some instrument is required.

And if it is assumed that in this respect, as to the property in question here, the law of Indiana was satisfied, a citizen of this State dealing with the property and its apparent owner in this State is not required to take notice of the records in Indiana. *Montgomery* v. *Wight*, 8 Mich. 143; *Boydson* v. *Goodrich*, 49 Mich. 65 (12 N. W. 913); *Corbett* v. *Littlefield*, 84 Mich. 30 (47 N. W. 581, 11 L. R. A. 95, 22 Am. St. Rep. 681). We hold that defendant's rights are unaffected by the existence and record in Indiana of the plaintiff's chattel mortgage. We do not perceive that defendant's

rights are in any manner affected by the decree of the Indiana court and the proceedings thereunder. Campbell's possession of the horse, after he bought him of plaintiff, was not disturbed.

Plaintiff has made out no right to the property superior to that of defendant, and the judgment must therefore be reversed and a new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.