METRO PLAN, INC., *v.* KOTCHER-TURNER, INC.

CHATTEL MORTGAGES—RECORDING—CONSENT TO TAKE PROPERTY OUT
OF STATE—AUTOMOBILES—GOOD FAITH PURCHASER.
    Judgment for plaintiff, mortgagee in New York under chattel
    mortgage duly recorded in New York and New Jersey where
    the mortgagor resided, on automobile registered in New York
    under a certificate of registration which did not show any
  .  lien or encumbrances on the title for balance due under mort-
    gage, in action against defendant purchaser of car in Mich-
    igan where the car had been taken without the mortgagee's
    consent and in which State the mortgage was not recorded,
    is affirmed by BUSHNELL, CHANDLER, MCALLISTER, and BUTZEL,
    JJ., on the ground that a lien in another State where the mort-
    gage was executed is not lost when the property is moved to
    this State without the knowledge or consent of the chattel
    mortgagee, the local recording statutes being inapplicable;
    and by SHARPE, C. J., and BOYLES, NORTH, and WIEST, JJ.,
    on the ground that, under the circumstances, defendant was
    not a good-faith purchaser of the car (3 Comp. Laws 1929,
    § 13424, as amended by Act No. 18, Pub. Acts 1934 [1st Ex.
    Sess.], and Act No. 129, Pub. Acts 1935).

Appeal from Wayne; Richter (Theodore J.), J.
Submitted October 18, 1940. (Docket No. 126,
Calendar No. 41,354.) Decided February 7, 1941.

Case by Metro Plan, Inc., a New York corporation,
against Kotcher-Turner, Inc., a Michigan corpora-
tion, for conversion of an automobile. Judgment
for plaintiff. Defendant appeals. Affirmed.

*Max Kahn,* for plaintiff.

*Bethel B. Kelley,* for defendant.

BUTZEL, J.   This is an action for conversion of an automobile.   The facts are before us by stipulation of counsel.   Plaintiff is a New York corporation engaged in the business of financing automobile sales on chattel mortgage security, with its principal place of business in the city of New York.   Defendant is a Delaware corporation engaged in the sale of new automobiles in Detroit.   On or about March 18, 1938, one Vincente Maestre, a resident of Toms River, N. J., but regularly employed in the city of New York, purchased a new high-grade automobile from a dealer in New York for the list price of $1,385, f. o. b. factory at Detroit, exclusive of taxes or license fees.   Payment was made in part from his own funds, and the sum of $960 was borrowed from plaintiff.   To secure the loan, he executed a chattel mortgage on the automobile on March 18, 1938, which mortgage provided for payment of the loan in 12 monthly instalments of $80 each, beginning April 29, 1938.   The mortgage stipulated that the automobile was to be stored in the garage at the rear of the mortgagor's home when not in actual use.   Another clause provided:

"The mortgagor agrees not to use the property for any illegal purposes, nor to remove or cause or permit the property to be removed from said (New York) county (except in the ordinary use thereof by the mortgagor), nor to sell, convey, assign, hire out or sublet the same to or in any manner whatsoever, without first obtaining the written consent of the mortgagee."

The mortgagee granted permission to store the automobile in the garage at the mortgagor's residence at Toms River, New Jersey, and to use the car in commuting daily to his place of employment in New York.   The mortgage was properly recorded in New York and New Jersey according to the laws of

these respective States, but there has never been any attempt to comply with the Michigan statutes providing for the filing of chattel mortgages (3 Comp. Laws 1929, § 13424* [Comp. Laws Supp. 1940, § 13424, Stat. Ann. § 26.929]). The purchaser registered the automobile under the laws of New York and obtained New York license plates; the registration certificate which conformed to New York law did not indicate that there were any liens or incumbrances on the title. Defendant had no actual knowledge of plaintiff's chattel mortgage.

On April 27, 1938, about 40 days after the purchase, the mortgagor drove to defendant's place of business in Detroit, and expressed his desire to trade the car for a new 1939 automobile when the new models would be ready for delivery later in the year. He represented to defendant's officer in charge of the business that he owned the automobile and had an unencumbered title thereto. A trade-in deal was made whereby the car was turned over to defendant with a bill of sale and an assignment of the New York registration certificate for $450 in cash and a credit memorandum for $450 which represented a partial payment on the new model; a few days later defendant sold the car to a used-car dealer in Detroit. Defendant presented the bill of sale and assignment of registration certificate to the proper Michigan authorities and obtained a Michigan certificate of title on May 6, 1938, and this certificate was assigned to the dealer who purchased the car from defendant.

The original purchaser made monthly payments on the debt for April, May, June and July, which payments reduced the balance to $640. On July 22, 1938, he wrote defendant that he had sold and as-

* As amended by Act No. 18, Pub. Acts 1934 (1st Ex. Sess.), and Act No. 129, Pub. Acts 1935.—Reporter.

signed the $450 credit memorandum to a resident of New York and requested defendant's consent to the transfer; on August 25, 1938, defendant informed the assignee that it consented to the transfer. The assignee has requested that defendant deliver to him a new automobile with an allowance for the credit memorandum, but, according to the stipulation, as defendant has failed to comply with this request, the credit is still outstanding.

Defendant contended in the court below that plaintiff was not entitled to recover because defendant had no knowledge of any foreign lien or encumbrance on the car traded in, and because plaintiff's chattel mortgage was not recorded in Michigan. The trial court ruled that defendant was not a bona fide purchaser because the circumstances surrounding the transaction led to the "irresistible" conclusion that defendant "had notice abundantly sufficient to arouse suspicion of an ordinarily prudent man, and cause him to make inquiry as to the purpose to [for?] which such transfer was being made." The trial court also observed that defendant possibly relied too much on Michigan law which gives no extraterritorial effect to foreign chattel mortgages. Judgment was entered for plaintiff for the balance of the debt owing it from the original purchaser. Defendant contends in this court that the facts set forth in the stipulation do not warrant a finding that defendant was not a good-faith purchaser, and that the mortgage executed in another State, but not recorded in Michigan, could not preserve plaintiff's rights as a chattel mortgagee not in possession, citing *Montgomery* v. *Wight,* 8 Mich. 143; *Boydson* v. *Goodrich,* 49 Mich. 65; *Corbett* v. *Littlefield,* 84 Mich. 30 (11 L. R. A. 95, 22 Am. St. Rep. 681); *Allison* v. *Teeters,* 176 Mich. 216. See, also, *Enterprise Optical Manfg. Co.* v. *Timmer* (C. C. A.), 71 Fed. (2d) 295.

For purposes of this opinion, we shall assume that defendant was a bona fide purchaser. The main question for our determination is whether the lien valid in another State is lost by failure to record in Michigan when the property is moved here without the knowledge or consent of the chattel mortgagee. The problem has not been before this court since *Allison* v. *Teeters, supra,* was decided in 1913. This case involved a horse on which a chattel mortgage was executed and recorded in Indiana, and then the animal was brought to Michigan and sold to a bona fide purchaser, who, it was held, took free of the foreign lien not recorded here. That decision followed the rule laid down in earlier cases herebefore cited, holding that the recording of a chattel mortgage in another jurisdiction had no extraterritorial effect to give notice of the lien in Michigan. "If the mortgagees desire to be protected where no notice can be made effectual," said JUSTICE CAMPBELL in *Montgomery* v. *Wight, supra,* 150, "they must take possession, and not allow the mortgagor to take the property where third parties have no means of ascertaining its title." The Supreme Court of the United States (*Bank of the United States* v. *Lee,* 38 U. S. [13 Pet.] 107 [10 L. Ed. 81]; *Hervey* v. *Rhode Island Locomotive Works,* 93 U. S. 664 [23 L. Ed. 1003]) and the highest courts of the far greater number of the States have taken the view that the local recording statutes are inapplicable to mortgages executed outside of the State on property located abroad at the time of the execution of the mortgage and subsequently removed without the knowledge or consent of the mortgagee. See 2 Beale, Conflict of Laws, § 265.1 to § 270.1; Beale, "Jurisdiction over Title of Absent Owner in a Chattel," 40 Harvard Law Review, 805; Griffin, "The Effect of Foreign Chattel Mortgages upon the Rights of

Subsequent Purchasers and Creditors," 4 Michigan Law Review, 358; *Beall & Beall* v. *Williamson,* 14 Ala. 55; *Wray Bros.* v. *H. A. White Auto Co.,* 155 Ark. 153 (244 S. W. 18); *Creelman Lumber Co.* v. *Lesh & Co.,* 73 Ark. 16 (83 S. W. 320, 3 Ann. Cas. 108); *Davis* v. *Standard Accident Ins. Co.,* 35 Ariz. 392 (278 Pac. 384); *Mercantile Acceptance Co.* v. *Frank,* 203 Cal. 483 (265 Pac. 190, 57 A. L. R. 696); *Mosko* v. *Matthews,* 87 Col. 55 (284 Pac. 1021); *General Credit Corp.* v. *Rohde,* 122 Conn. 100 (187 Atl. 676); *In re Shannahan & Wrightson Hardware Co.,* 32 Del. (2 W. W. Harr.) 37 (118 Atl. 599); *Smith's Transfer & Storage Co.* v. *Reliable Stores Corp.,* 61 App. D. C. 106 (58 Fed. [2d] 511); *Hopkins* v. *Hemsley,* 53 Idaho, 120 (22 Pac. [2d] 138); *Mumford* v. *Canty,* 50 Ill. 370 (99 Am. Dec. 525); *National Bond & Investment Co.* v. *Larsh,* 262 Ill. App. 363; *Ames Iron Works* v. *Warren,* 76 Ind. 512 (40 Am. Rep. 258); *First National Bank* v. *Ripley,* 204 Iowa, 590 (215 N. W. 647); *Willys-Overland Co.* v. *Evans,* 104 Kan. 632 (180 Pac. 235); *Perkins* v. *National Bond & Investment Co.,* 224 Ky. 65 (5 S. W. [2d] 475); *General Motors Acceptance Corp.* v. *Nuss,* 195 La. 209 (196 South. 323); *Langworthy* v. *Little,* 12 Cush. (66 Mass.) 109; *Wilson & Co.* v. *Carson & Co.,* 12 Md. 54; *Silver* v. *McDonald,* 172 Minn. 458 (215 N. W. 844); *Mason City Production Credit Ass'n* v. *Sig Ellingson & Co.,* 205 Minn. 537 (286 N. W. 713, certiorari denied, 308 U. S. 599 [60 Sup. Ct. 130, 84 L. Ed. 501]); *National Bank of Commerce* v. *Morris,* 114 Mo. 255 (21 S. W. 511, 19 L. R. A. 463, 35 Am. St. Rep. 754); *Farmers & Merchants State Bank* v. *Sutherlin,* 93 Neb. 707 (141 N. W. 827, 46 L. R. A. [N. S.] 95, Ann. Cas. 1914B, 1250); *Cleveland Machine Works* v. *Lang,* 67 N. H. 348 (31 Atl. 20, 68 Am. St. Rep. 675); *Parr* v. *Brady,* 37 N. J. Law, 201; *Hart* v. *Thompson,* 37 N. M. 267 (21 Pac.

[2d] 96, 87 A. L. R. 962) ; *Goetschius* v. *Brightman,* 245 N. Y. 186 (156 N. E. 660) ; *Hornthal* v. *Burwell,* 109 N. C. 10 (13 S. E. 721, 13 L. R. A. 740, 26 Am. St. Rep. 556) ; *Wilson* v. *Rustad,* 7 N. D. 330 (75 N. W. 260, 66 Am. St. Rep. 649) ; *Kanaga* v. *Taylor,* 7 Ohio St. 134 (70 Am. Dec. 62) ; *Kerfoot* v. *State Bank of Waterloo,* 14 Okla. 104 (77 Pac. 46) ; *Emerson-Brantingham Implement Co.* v. *Ainslie,* 38 S. D. 472 (161 N. W. 1001) ; *Bankers' Finance Corp.* v. *Locke & Massey Motor Co.,* 170 Tenn. 28 (91 S. W. [2d] 297) ; *Taylor* v. *Boardman,* 25 Vt. 581; *Craig* v. *Williams,* 90 Va. 500 (180 S. W. 899, 44 Am. St. Rep. 934, but see Virginia Code of 1919, § 5197* and *Smith Motor Sales, Inc.,* v. *Lay,* 173 Va. 117 [3 S. E. (2d) 190]) ; *Cunningham* v. *Donelson,* 110 W. Va. 331 (158 S. E. 705) ; cf. *Southern Finance Co.* v. *Zegar,* 120 W. Va. 420 (198 S. E. 875) ; *Yund* v. *First National Bank,* 14 Wyo. 81 (82 Pac. 6) ; *Shapard* v. *Hynes* (C. C. A.), 104 Fed. 449 (52 L. R. A. 675). See, also, 64 L. R. A. 353; 35 L. R. A. (N. S.) 385; L. R. A. 1917D, 942; 57 A. L. R. 702; 87 A. L. R. 973.

The general rule is stated in American Law Institute, Restatement, Conflict of Laws, § 268(1) :

"If, after a chattel is validly mortgaged, it is taken into another State without the consent of the mortgagee, the interest of the mortgagee is not divested as a result of any dealings with the chattel in the second State."

Comment c:

"Under the rule stated in this section, the interest of the mortgagee is not divested by any dealings with the chattel in the second State whether such dealings consist of a sale by the mortgagor to a purchaser for value and without notice, or of an attachment or execution levied by a creditor of the

---

* Same section, Code of 1930.—REPORTER.

mortgagor.    It is immaterial that the mortgage has not been recorded in the second State.''

The minority principle finds recognition today only in Texas (*Farmer* v. *Evans,* 111 Tex. 283 [233 S. W. 101]; *General Motors Acceptance Corp.* v. *Fowler* [Tex. Civ. App.], 36 S. W. [2d] 589) and Pennsylvania (see *Kaufmann & Baer* v. *Monroe Motor Line Transportation, Inc.,* 124 Pa. Super. 27 [187 Atl. 296]); and even in the latter jurisdiction the question appears not to have been passed on by the highest court in the State.    In Tennessee, a step toward the minority rule (*Snyder* v. *Yates,* 112 Tenn. 309 [79 S. W. 796, 64 L. R. A. 353, 105 Am. St. Rep. 941]) was subsequently retracted (*Newsum* v. *Hoffman,* 124 Tenn. 369 [137 S. W. 490]; *Bankers' Finance Corp.* v. *Locke & Massey Motor Co., supra.* Louisiana, long stated by courts and textwriters to be a follower of the minority rule, recently construed its chattel mortgage statute in harmony with the majority rule.    *General Motors Acceptance Corp.* v. *Nuss, supra* (April, 1940), reversing 192 South. 248 (La. App.).

The rule heretofore followed in Michigan has had the severe criticism of courts and textwriters.    See Beale, *op. cit.,* 40 Harvard Law Review, 805; Griffin, *op. cit.,* 4 Michigan Law Review, 358.    In *Newsum* v. *Hoffman, supra,* at p. 374, it was said:

''Still, on further consideration, we yield to the great weight of authority on the general question, with the qualification concerning the effect of the consent of the mortgagee above indicated.    It seems a churlish and ungracious course, if not an example of improvident judgment, to hold out against the general comity of the many States which recognize the rule of interstate courtesy upon this subject.''

In *Mercantile Acceptance Co.* v. *Frank, supra,* 489, the supreme court of California approvingly quoted

the following from the opinion in *Motor Investment Co.* v. *Breslauer,* 64 Cal. App. 230 (221 Pac. 700):

"The rule, however, appears to be founded upon the principles of equity and natural justice As applied to cases of the character of the one before us, it can produce no harsh or unjust results. The principle underlying it may be analogized to that upon which the owner of the property stolen from him and taken or transported to another State may follow the thief into the latter State and reclaim or take possession of the pilfered goods or chattels wherever found. A State may, it is true, refuse to recognize the rule of comity in such cases, but should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or encumbrancer of personal property brought into a State under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the State should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein."

We think the analogy with the case of stolen property more nearly fits the case today than to regard the mortgagee as allowing the mortgagor "to take the property where third persons have no means of ascertaining its title." An innocent purchaser always runs some risk that crime in the chain of transfers may bar his rights as against the owner. The removal of mortgaged property from the State without the consent of the mortgagee is a crime in Michigan (Act No. 328, § 417, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115-417, Stat. Ann. § 28.649]) and other jurisdictions (*e. g.,* Penal Code, Texas,

1925, Art. 1558*; New Mexico Statutes, 1929 Comp. § 21-111), and in New York, the sale, assignment, exchange, secretion, or disposition of the mortgaged property with intent to defraud the mortgagee is a misdemeanor. New York Penal Law, § 940. The suggestion of Justice CAMPBELL in *Montgomery* v. *Wight, supra,* that the mortgagee must take possession to protect his lien does not conform to present day business practices in the financing of automobiles and other chattels; mortgagees of chattels perform a demanded service and should have reasonable protection in so doing when the subject of their security is surreptitiously removed from the State where the lien arose, not only in violation of the terms of the debtor's agreement, but also in violation of penal laws. While an occasional bona fide purchaser must suffer, under the majority rule, we do a greater good in protecting the financing of chattels where the mortgagee has done everything in his power to protect his security; in doing so, if the observation of Professor Beale is correct (*op. cit.,* 40 Harvard Law Review, 805, 810), Michigan will not "doubtless continue full of willing bona fide buyers." A uniform mutual comity between States seems more in accord with fair dealing and modern business practice than the nullification of a lien valid elsewhere when the chattel is unlawfully brought into our jurisdiction and dealt with here without knowledge, consent or other inconsistent conduct on the part of the mortgagee. Our earlier cases, to the extent that they are inconsistent herewith, should be overruled.

Defendant contends that the judgment cannot stand because there was no evidence of the value of the automobile at the time of the conversion and no

---

* Amended 1929, 2d Sess., chap. 48, p. 85, § 1; see Penal Code, Vernon's Texas Statutes, 1936, § 1558.—REPORTER.

evidence of the value of plaintiff's interest therein. The extent of recovery by the mortgagee for conversion of the security is the value of the goods at the time of the conversion, limited by the unpaid balance of the debt. *Huellmantel* v. *Vinton,* 112 Mich. 47; *Showman* v. *Lee,* 79 Mich. 653, and 86 Mich. 556; *Worthington* v. *Hanna,* 23 Mich. 530. The stipulation reveals that about 40 days before the conversion the automobile had a list price at Detroit of $1,385, that at about the time of the conversion defendant paid $450 in cash and allowed a credit toward another purchase to the extent of $450. It is further stipulated that the balance of the debt is $640. There was ample data before the trial court to support a judgment for $640.

The judgment is affirmed, with costs to plaintiff.

Bushnell, Chandler, and McAllister, JJ., concurred with Butzel, J.

Boyles, J. (*concurring in the result*). I do not agree that *Allison* v. *Teeters,* 176 Mich. 216, and similar decisions of this court, should be overruled.

In brief, the facts in this case are as follows: One Vincente Maestre, a resident of New Jersey, employed in the city of New York, purchased a new automobile in New York from a dealer; he paid part in cash from his own funds and the balance from a loan secured from plaintiff herein, a New York corporation engaged in financing automobile sales on chattel mortgage security. Maestre gave to plaintiff herein a chattel mortgage on the automobile providing for monthly instalment payments. It was provided that the purchaser might use the car in commuting daily from his residence in New Jersey to his business in New York. The chattel mortgage was properly recorded both in New York and in New

Jersey, but was not filed or recorded in Michigan. The automobile was properly registered under the laws of New York. About 40 days after the purchase, Maestre drove the automobile to defendant's place of business in Detroit and traded it to defendant for a new car of another make, not yet manufactured, to be delivered some months later when the new model was put on the market. The defendant is a dealer engaged in the business of buying and selling automobiles in Detroit. Defendant paid Maestre for his automobile $450 in cash and a due bill or credit memo for $450 to be applied on the purchase of the new car. Maestre defaulted to plaintiff in his payments on the chattel mortgage, absconded; plaintiff located the car, ascertained that defendant had purchased it, and brought suit for conversion claiming in substance that defendant's title was subordinate to plaintiff's chattel mortgage lien.

It is conceded that defendant had no knowledge of plaintiff's chattel mortgage, and that in accordance with New York law no notice of any lien appeared on the New York certificate of registration which was transferred to defendant along with a bill of sale from Maestre to defendant at the time of the trade-in. The court below gave plaintiff a judgment and Mr. Justice BUTZEL, in finding for affirmance, says that our earlier cases, *Allison* v. *Teeters, supra,* and those cases upon which that decision was grounded, should be overruled.

In the *Allison Case,* a chattel mortgage was executed and filed in a neighboring State but not in Michigan, the mortgagor sold the mortgaged property (a horse) which was removed to Michigan and sold to the defendant, a purchaser in good faith without notice of the mortgage lien. We held that, since the purchaser in Michigan *obtained title in*

*good faith*, the plaintiff could not recover the property; that a citizen of this State dealing with property and its apparent owner in this State is not required to take notice of the records in another State; and that the defendant's rights were not affected by the existence and record of the plaintiff's chattel mortgage in another State, unknown to defendant. See, also, *Boydson* v. *Goodrich*, 49 Mich. 65.

Mr. Justice BUTZEL's opinion would not only overrule these decisions, but, in my judgment, would put an exception into 3 Comp. Laws 1929, § 13424* (Comp. Laws Supp. 1940, § 13424, Stat. Ann. § 26.929), which the legislature did not put into this act. This statute provides that every mortgage of goods and chattels which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession shall be absolutely void as against the creditors of the mortgagor, and *subsequent purchasers* or mortgagees *in good faith,* unless the mortgage or a true copy thereof is filed in the office of the register of deeds of some county in this State (in which the property is located, if the mortgagor is a nonresident of this State). Mr. Justice BUTZEL would except from this statute all chattel mortgages executed and filed or recorded in a proper manner in another State. I do not question but that this might be a salutary exception as applied to motor vehicles under present-day conditions. However, it should not be put into the law of this State by judicial decision. Any such obvious amendment to section 13424 should be left to legislative enactment. Such an exception to the statute would seem to be objectionable if applied to all classes of personal property, and there would be slight protection left to a purchaser of furniture, jewelry, a

---

* Amended by Act No. 18, Pub. Acts 1934 (1st Ex. Sess.), and Act No. 129, Pub. Acts 1935.—REPORTER.

radio, stock, farm animals, or any other chattels covered by lien in any other State, although undisclosed to the purchaser.

I concur in the judgment of the trial court on the ground that the defendant was not a subsequent purchaser *in good faith* of the automobile registered in New York. Under Michigan statute law, the chattel mortgage is declared to be void "as against subsequent purchasers or mortgagees *in good faith,*" unless filed in the office of the register of deeds. This makes it incumbent upon the subsequent purchaser that he must be a purchaser in good faith. It is well settled in Michigan that actual payment in good faith is necessary to complete a bona fide purchase, and, in any event, a purchaser from a fraudulent vendee is protected only to the extent of payment actually made in good faith. *Dixon* v. *Hill,* 5 Mich. 404; *Warner* v. *Whittaker,* 6 Mich. 133 (72 Am. Dec. 65); *Blanchard* v. *Tyler,* 12 Mich. 339 (86 Am. Dec. 57); *Stone* v. *Welling,* 14 Mich. 514; *Kohl* v. *Lynn,* 34 Mich. 360; *Webster* v. *Bailey,* 40 Mich. 641; *McGraw* v. *Solomon,* 83 Mich. 442; *Zucker* v. *Karpeles,* 88 Mich. 413; *Automobile Equipment Co.* v. *Motor Bankers Corp.,* 251 Mich. 220. In the case at bar, the purchaser was an automobile dealer engaged in the business of buying and selling new and used automobiles. A stranger and a nonresident of this State came to defendant offering to trade in a new high-priced automobile for another new car at a substantial reduction from the list price. This would put any experienced automobile dealer on inquiry. Furthermore, the stranger asked for a trade-in on an equally expensive car not yet manufactured and not ready for delivery for several months. Obviously, this would leave the owner without means of motor vehicle transportation during that period. Apparently the stranger wanted cash, and accepted a sub-

stantial cash sum along with a due bill or credit memo to apply on the new purchase. The New York certificate of title did not require a showing as to liens. It did show the New York and New Jersey addresses of the stranger. An ordinarily prudent person, particularly an experienced dealer, would know how to ascertain whether the ownership was genuine and unencumbered. A prudent person would be put on inquiry why the stranger came from New York or New Jersey to effect a trade-in with an unknown (to him) concern in Detroit. All these facts and circumstances and inferences lead to the unescapable conclusion that the defendant was not a subsequent purchaser in good faith as against possible claims it might reasonably know could be made by someone else against the car. A mere request to Maestre to produce the bill of sale showing from whom he purchased his car would no doubt have unfolded the entire factual situation. That defendant had its suspicions is indicated by the fact it promptly disposed of the car to another used car dealer who proceeded to sell it in Indiana.

The judgment of the court below should be affirmed on the ground that the defendant was not a subsequent purchaser in good faith. Appellee to have costs.

SHARPE, C. J., and NORTH, and WIEST, JJ., concurred with BOYLES, J.