COMMERCE ACCEPTANCE COMPANY v. DENTON.

1. CHATTEL MORTGAGES—REMOVAL TO ANOTHER JURISDICTION—SALE.
   The lien of an original chattel mortgage, valid under the laws of the jurisdiction where executed, cannot be destroyed by a mortgagor's criminal act in removing the property from the jurisdiction and selling it (CL 1948, § 566.140a).

2. SAME—AUTOMOBILES—CERTIFICATE OF TITLE—ESTOPPEL.
   Oklahoma chattel mortgagee was not estopped from asserting lien on automobile, where his mortgage was duly executed and recorded in that State, by reason of the fact that the Oklahoma certificate of title did not bear a notation of such lien, the statutes of that State permitting though not requiring such entry on the certificate, but which certificate did contain a printed warning that existing liens might not be indicated thereon.

3. COSTS—BRIEFS.
   No costs are allowed upon affirmance of judgment for nonresident chattel mortgagee in replevin action, where plaintiff filed no brief.

Appeal from Muskegon; Kane (Edward T.), J., presiding. Submitted June 3, 1959. (Docket No. 23, Calendar No. 47,530.) Decided October 13, 1959.

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur, Chattel Mortgages § 21.
  Removal of property into another state after lien of chattel mortgage has attached. 57 ALR 711, 13 ALR2d 1318.
[3] 14 Am Jur, Costs § 92.

Replevin by Commerce Acceptance Company, Inc., a Kansas corporation, against Hubert (Denny) Denton, doing business as Denny Denton Trailer and Auto Sales, of automobile subject to chattel mortgage recorded in another State.   Money judgment for plaintiff.   Defendant appeals.   Affirmed.

*Parmenter & Forsythe,* for defendant.

Smith, J.   The question in this case concerns a fraud practiced through the sale in Michigan of an automobile licensed in Oklahoma.   It was represented by the seller to be free from any liens.   In truth, however, it was subject to a mortgage properly executed and recorded in Oklahoma.

Specifically, one Roger Frank Allen came to defendant Denny Denton's Trailer and Auto Sales, driving a current model Plymouth convertible with Oklahoma license plates.   He said that he had recently purchased the car for cash from a new car dealer at Bartlesville, Oklahoma, but that he now wanted a less expensive car and a house trailer.   A deal was effectuated, Allen securing an older car, a trailer and a sum in cash in exchange for the Plymouth.

The Plymouth, however, was mortgaged, in Oklahoma, to the plaintiff herein.   Suit in replevin was had and judgment rendered in favor of plaintiff by the trial court sitting without a jury.   The court, noting that defendant had had "ten years' experience in the field of dealing with titles to trailers and various things," found that he had purchased the new car within 7 days of its original sale in Bartlesville, Oklahoma, without making any attempt to ascertain from the Bartlesville dealer, or the county clerk in Bartlesville (who had, in truth, recorded the mortgage), whether the title was free and clear.   He did, however, call our motor vehicle

division in Muskegon to "ask them about an Oklahoma title that didn't show any liens," but for just what reason or purpose, is not clear, though defendant asserts that his suspicions had not been aroused respecting title to the car. All of this, found the trial judge, in substance, amounted to a showing of bad faith in making the purchase. The defendant is before us on a general appeal.

An overwhelming majority of the States of the nation (some 45 in number prior to the admission of the newer states to the Union), the Restatement of the Law,* and noted scholars† all agree that the lien of the original mortgage, valid under the laws of his jurisdiction, cannot be destroyed by a mortgagor's (usually) criminal act in removing the property from the jurisdiction and selling to another.

We, however, tenaciously clung to the opposing view, following our earliest holding on the subject in the case of *Montgomery* v. *Wight,* 8 Mich 143, decided in the year 1860. It was an action to recover a chestnut stallion. The animal had been mortgaged to the plaintiff Montgomery in Canada and the mortgage there recorded. It was, however, later returned to Detroit for training and was there levied upon and purchased by defendant. We held that the mortgage of the plaintiff was invalid as against the levy and sale under the defendant's execution. "If the mortgagees desire to be protected where no notice can be made effectual," said the Court (p 150), "they must take possession, and not allow the mortgagor to take the property where third parties have no means of ascertaining its title."

Although the rule of conduct may well have been workable with respect to horse traders before the Civil War, it is manifestly unworkable in today's

---

* Restatement, Conflict of Laws, § 268(1).

† *E.g.,* Beale, Jurisdiction Over Title of Absent Owner in a Chattel, 40 Harv L Rev 805.

economy.   The automobile subject to a mortgage normally remains, today, in the possession of the mortgagor.   Otherwise he might as well not own the car.   Yet to require the mortgagee to record his mortgage from Alaska to Texas, and Maine to Hawaii, under penalty of being defrauded by an unscrupulous mortgagor is a manifest absurdity.

Thus it is noted that most jurisdictions hold that the lien of a mortgage valid in the State of its execution is not lost by the mortgagor's unilateral act of removal of the security from the State, and that the chain of the innocent purchaser in the foreign jurisdiction is no stronger than its weakest link, namely, the title of the wrongdoer from whom it is claimed.

The Restatement of the Law of Conflict of Laws, § 268(1), puts the matter thus:

"If, after a chattel is validly mortgaged, it is taken into another State without the consent of the mortgagee, the interest of the mortgagee is not divested as a result of any dealings with the chattel in the second State."

Comment (c) thereupon reads as follows:

"Under the rule stated in this section, the interest of the mortgagee is not divested by any dealings with the chattel in the second State whether such dealings consist of a sale by the mortgagor to a purchaser for value and without notice, or of an attachment or execution levied by a creditor of the mortgagor.   It is immaterial that the mortgage has not been recorded in the second State."

When the situation was last before our Court[*] we divided 4-4 on the matter of aligning ourselves with the overwhelming majority of the jurisdictions of this country.   Those who opposed the overruling of the old cases did so principally upon the

---

[*] *Metro Plan, Inc.,* v. *Kotcher-Turner, Inc.,* 296 Mich 400.

ground that the legislature should deal with the problem. Their position was stated (p 412) in the following terms:

"Mr. Justice Butzel would except from this statute all chattel mortgages executed and filed or recorded in a proper manner in another State. I do not question but that this might be a salutary exception as applied to motor vehicles under present-day conditions. However, it should not be put into the law of this State by judicial decision. Any such obvious amendment to [CL 1929] section 13424 should be left to legislative enactment."

The legislature promptly acted, adopting PA 1941, No 181,* which provides as follows:

"The provisions of this chapter shall not be applicable to any mortgage or conveyance intended to operate as a mortgage of goods and chattels owned by a nonresident of this State and located at the time of the execution thereof outside of the State, if such property was brought into the State without the written consent of the mortgagee or the then holder of such mortgage or conveyance. The validity of such mortgage or conveyance shall, in such case, be determined by the applicable provisions of the law of the State in which such mortgage or conveyance was executed."

So much by way of the background against which this statute is to be interpreted. Defendant is silent as to the statute or the effect thereof. He relies entirely upon the assertion of an estoppel, insisting that plaintiff is "estopped" to assert the priority of its lien upon the ground that it did not cause a notation of its lien to be placed upon the certificate of title in blank spaces thereon that could have been utilized for the purpose. We say "could" have been advisedly, however, since there was no mandatory

_____
* CL 1948, § 566.140a (Stat Ann 1953 Rev § 26.929[1]).

requirement under Oklahoma law that such be done, clear warning of which lack appears on the certificate itself in the following words: "This is not an office of record for the filing of liens and does not guarantee the statement as to liens in this certificate of title." What this says, in language somewhat less formal, is that so far as the certificate of title is concerned the buyer takes his chances as to liens. Having thus taken his chances the defendant before us is in a poor position to complain that he lost.

As a matter of fact the loose use of the word "estoppel" in connection with a problem of ownership can only lead to confusion. The case in which we would estop an owner out of his property, real or personal, must be a most unusual one. As a matter of fact, the grounds for an estoppel do not here exist. There is no language here amounting to a misrepresentation or concealment of the lien, in fact, notice is clearly given that the certificate cannot be used as a source of such information. On the mortgagee's part there can have been no reasonable expectation (in view of such disclaimer) that another would "naturally and probably" assume from the representation made that there was no lien. And further, the defendant here could not reasonably have relied upon the absence of lien through the words of disclaimer as to liens above quoted, and found on the certificate itself.

The statute before us requires no more for the validity of a foreign lien than that it be valid according to "the applicable provisions of the law of the State in which such mortgage" was executed. There is not even a claim here that the mortgage before us was invalidly executed or recorded in the State of Oklahoma.

Affirmed. There will be no costs allowed appellee in view of its failure to file a brief.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.